16-2918-pr
Pollard v. United States Parole Commission

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of May, two thousand seventeen.

PRESENT:  REENA RAGGI,
           SUSAN L. CARNEY,
                         *Circuit Judges*,
           LEWIS A. KAPLAN,
                         *District Judge*.*

---------------------------------------------------------------------------

JONATHAN J. POLLARD,

                      *Petitioner-Appellant*,

      v.                                  No. 16-2918-pr

UNITED STATES PAROLE COMMISSION, J. PATRICIA WILSON SMOOT, solely in her capacity as Chair of the United States Parole Commission, UNITED STATES PROBATION OFFICE, FOR THE SOUTHERN DISTRICT OF NEW YORK, MICHAEL J. FITZPATRICK, solely in his capacity as Chief United States Probation Officer,

                      *Respondents-Appellees*.

---------------------------------------------------------------------------

APPEARING FOR APPELLANT:    ELIOT LAUER (Jacques Semmelman, Gabriel Hertzberg, Sylvi Sareva, *on the brief*), Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, New York.

---

* Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

APPEARING FOR APPELLEES:      REBECCA S. TINIO, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on August 12, 2016, is AFFIRMED.

In 1984, petitioner Jonathan J. Pollard was convicted, following a guilty plea, of conspiracy to deliver national defense information to a foreign government in violation of 18 U.S.C. § 794(c), for which he was sentenced to life imprisonment. On November 20, 2015, after serving 30 years of his sentence, Pollard was paroled pursuant to 18 U.S.C. § 4206(d), subject to special conditions, including, as relevant here, GPS monitoring, computer monitoring, and a curfew.[1] That same day, Pollard filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 to challenge those conditions. He here appeals

---

[1] The parole statute provides:

> The Commission may impose or modify other conditions of parole to the extent that such conditions are reasonably related to—
>
> (1) the nature and circumstances of the offense; and
> (2) the history and characteristics of the parolee;
>
> and may provide for such supervision and other limitations as are reasonable to protect the public welfare.

18 U.S.C. § 4209(a) (1985).

2

from the denial of that petition.  *See Pollard v. U.S. Parole Comm'n*, No. 15-CV-9131 (KBF), 2016 WL 4290607 (S.D.N.Y. Aug. 11, 2016).

We review the denial of a § 2241 petition *de novo*, while accepting factual findings absent clear error.  *See Lugo v. Hudson*, 785 F.3d 852, 854 (2d Cir. 2015).  In doing so, we are mindful that § 2241 review of parole commission decisions is "extremely limited" to whether the commission has abused its "broad discretion to determine parole eligibility" and to "interpret[] its own regulations."  *Bialkin v. Baer*, 719 F.2d 590, 593 (2d Cir. 1983) (internal citations omitted).[2]  As such, a federal reviewing court may not substitute its own judgment for that of the Commission or gainsay the Commission's credibility determinations and factual findings.  Rather, a court can disturb the Commission's ultimate determination only if it lacks a rational basis.  *See id.*; *see also Iuteri v. Nardoza*, 732 F.2d 32, 37 (2d Cir. 1984).  In applying these standards here, we assume the parties' familiarity with the facts and procedural history of this case, which we reference only as necessary to explain our decision to affirm for substantially the

---

[2] Under federal regulation, the Commission may,

> Impose a condition of release . . . if [it] determine[s] that imposing the condition is reasonably related to the nature and circumstances of [the parolee's] offense or [his] history and characteristics, and at least one of the following purposes of criminal sentencing: The need to deter [him] from criminal conduct; protection of the public from further crimes; or the need to provide [him] with training or correctional treatment or medical care.  In choosing a condition [the Parole Commission] will also consider whether the condition involves no greater deprivation of liberty than is reasonably necessary for the purposes of deterrence of criminal conduct, protection of the public from crime and offender rehabilitation.

28 C.F.R. § 2.40(b).

reasons articulated by the district court. *See Pollard v. U.S. Parole Comm'n*, 2016 WL 4290607.

1.    GPS Monitoring and Curfew Conditions

Pollard argues that the GPS monitoring and curfew conditions lack an evidentiary basis. Insofar as the Commission explained that these conditions were imposed to deter Pollard from further criminal conduct, to protect the public, and to minimize the risk of flight, it relied, *inter alia*, on the deceptive nature of Pollard's criminal conduct, his professed desire (even recently) to leave the United States for Israel, and his propensity to violate conditions imposed during his prosecution and incarceration relating to the classified information he had compromised.

To the extent Pollard faults the Commission for considering offense conduct more than 30 years earlier, this argument is defeated by 18 U.S.C. § 4209(a), which expressly identifies "the nature and circumstances of the offense" of conviction as a matter to be considered in imposing any parole condition. The statute similarly requires Commission consideration of a defendant's "history and characteristics," without regard to timeframe. *Id.* Thus, as this court has recognized, "[i]n making parole decisions, the Commission is required by statute to consider all available relevant information concerning the prisoner." *Ochoa v. United States*, 819 F.2d 366, 372 (2d Cir. 1987).

Accordingly, we identify no error in the Commission's consideration of conduct and circumstances arising more than 30 years ago. Indeed, the age of this evidence manifests the seriousness of Pollard's crime, as reflected in his lengthy sentence.

In as much as Pollard's arguments challenge the weight the Commission accorded certain information and the credibility determinations it made, such decisions fall within its broad discretion and may not be second-guessed by a federal court absent a clear showing of abuse. *See Bialkin v. Baer*, 719 F.2d at 593. We identify no such abuse in the fact that the Commission, in concluding that Pollard presented a risk of flight, gave weight to a letter from two Members of Congress articulating "Mr. Pollard's wish to move to Israel." J.A. 170. While Pollard asserts that he desired *lawfully* to move to Israel, the Commission was entitled to weigh his recent expressions on that subject in light of his past efforts to flee illegally to Israel. *See Ochoa v. United States*, 819 F.2d at 372 (referencing statutory requirement that Commission consider "all available relevant information"). Similarly, the Commission did not abuse its discretion in according weight to a 1995 letter from the then-CIA Director reporting that classified information had appeared in Pollard's prison correspondence at least 14 times. The fact that Pollard was never charged or disciplined for these communications did not strip the conduct of relevancy in the Commission's assessment of whether to impose special conditions on Pollard's parole. *See generally* 18 U.S.C. § 4207(5) (stating that Commission "shall consider" victim's statement, oral or otherwise, as to harm caused by crime); *Bowen v. U.S. Parole Comm'n*, 805 F.2d 885, 888 (9th Cir. 1986) (recognizing Commission authority to consider all relevant information to include unadjudicated matters).

Pollard argues that the Commission could not base his parole conditions on inaccurate facts, but he fails to show that the Commission did so. Such self-serving denials as are made in his appellate brief do not show that the Commission abused its

5

discretion in finding that he violated a court-imposed gag order in speaking to a reporter while incarcerated, attempted to disseminate classified information in his prison correspondence, and provided or attempted to provide classified information to foreign countries or agents beyond Israel.

Pollard argues that the challenged conditions lack a rational basis absent proof that he still remembers, and, therefore, could still disseminate classified information that came into his possession more than 30 years ago. The argument fails because the Commission's duty to "protect the public welfare," 18 U.S.C. § 4209(a), did not depend on proof of his memory, *cf. United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005) ("The law, however, recognizes that the *mens rea* elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom."); *United States v. George*, 779 F.3d 113, 121 (2d Cir. 2015). Rather, the Commission acted within its discretion to impose special conditions in light of the letter it received from James R. Clapper, the then-Director of National Intelligence, reporting that a specific, recent re-review of documents compromised by Pollard confirmed their continued classified status. Pollard points to no evidence to the contrary. Indeed, Clapper's conclusion is reinforced by a 2016 declaration submitted to the district court by the Director of the Information Management Division, Office of the Director of National Intelligence, which states that "some of the sources and methods" used to develop the intelligence acquired by Pollard "not only remain classified but are still in use by the Intelligence Community today," J.A. 377, such that disclosure could place foreign partnerships and human sources and their families at risk. On such a record, the

6

Commission did not exceed its discretion in imposing special conditions on Pollard—even absent proof of what he did or did not remember classified information—that minimized the risk of harm he continued to pose for United States intelligence. Nor was the Commission, whose members do not carry security clearances, required personally to review or evaluate the information at issue to conclude that special conditions were warranted.

Finally, Pollard argues that because the GPS monitoring and curfew will not absolutely prevent his further disclosure of classified information or his flight from the United States, these conditions cannot be deemed rationally related to such government interests. The argument is defeated by precedent recognizing that rational-basis review does not demand that a law or rule—or here, a parole condition—"strike at all evils at the same time," but may "only partially ameliorate a perceived evil." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) (internal quotation marks omitted).

In sum, for these reasons as well as those stated by the district court, *see Pollard v. U.S. Parole Comm'n*, 2016 WL 4290607, at *9–10, we conclude that Pollard's challenge to the curfew and GPS monitoring conditions of his parole fails on the merits.

2.   Computer Monitoring Condition

In conditioning Pollard's parole on the monitoring of any computer used by him, the Commission cited the need to minimize the risk of his disclosing classified information and to monitor compliance with his plea agreement's stipulation regarding unauthorized disclosure and pre-publication review. *See* J.A. 216. The Commission further cited Pollard's tendency to dissemble, and, as already discussed above, his history

7

of violating pre-trial conditions, as well as the continued classified status of information he compromised. Because our discussion and conclusions in the previous section of this order apply with equal force here, we need only address arguments unique to computer monitoring.

Pollard contends that the Commission misinterpreted evidence as to his professed job offer and his characterization of himself as a "White Knight" for Israel in concluding that he had a propensity to dissemble. In arguing that this conclusion is irrational, Pollard maintains that he did not misrepresent the existence of a job offer upon his release; rather, defense counsel, who orchestrated that offer, advised Pollard that he "could not reasonably ask his prospective employer to subject its company computers to government monitoring." Appellant's Br. 24. Pollard further maintains that his self-characterization as a "White Knight for Israel" is accurate because he was never charged with disclosing classified information to any other country. *Id.*

The concerns identified by the Commission were rational. First, Pollard adduced no evidence that he had ever discussed the monitoring condition with his purported prospective employer or otherwise attempted to find employment consistent with the condition. Rather, the record reveals that defense counsel instructed Pollard not to work unless the condition was removed. On this record, viewed together with evidence that Pollard's parole officer would work with a prospective employer to minimize the intrusion on employer functions in monitoring Pollard's computer communications, the Commission had a rational basis to conclude that Pollard's representation that the monitoring condition precluded him from obtaining any employment was less than

8

candid or complete and, in fact, an example of his propensity to dissemble. Second, as already discussed, the Commission's statutory requirement to consider all record evidence, including uncharged activities, *see Ochoa v. United States*, 819 F.2d at 372, allowed it to rely on evidence of Pollard's willingness to traffic classified information to non-Israeli customers to find that Pollard has a propensity to dissemble.

Insofar as Pollard asserts that the computer monitoring condition is not reasonably related to government interests because he did not use a computer or the internet to commit the crime of conviction, the argument fails for the reasons stated by the district court. Specifically, there is a reasonable nexus between Pollard's offense conduct, which involved the distribution of information, and computers, which are the most efficient and common means of undertaking that activity today. The Commission's decision not to restrict or monitor Pollard's telephone conversations, meetings, or regular mail warrants no different conclusion. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 466 (holding that limitation can be rational even if it only partially ameliorates perceived evil).

Further, although Pollard broadly characterizes the condition as requiring unfettered government access to any employer's computers, which "effectively precludes" him from securing any employment, Appellant's Br. 28, we have already acknowledged record evidence that the Parole Office is prepared to customize its monitoring to accommodate employer concerns. In any event, as also recognized, Pollard's claim that computer monitoring precludes him from finding any job is undercut by his failure to show that he has conferred with any prospective employer, much less

9

that every employer contacted has refused to hire him based on computer monitoring even after discussing ameliorating possibilities with the Parole Office.

Accordingly, we conclude that the Commission did not abuse its discretion or act without a rational basis in imposing the computer monitoring condition.

3.    Conclusion

We have considered Pollard's remaining arguments and conclude that they are without merit.  For the reasons stated, the district court's August 12, 2016 judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court