16-3950-cr
United States v. Cain

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of May, two thousand eighteen.

PRESENT: GERARD E. LYNCH,
CHRISTOPHER F. DRONEY,
*Circuit Judges*,
WILLIAM K. SESSIONS III,
*District Judge.*[*]

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                                  16-3950-cr

CHRIS CAIN,

*Defendant-Appellant*,

DAVID CAIN, JR., JAMIE SOHA, PATRICK ACKROYD,

_____

[*] Judge William K. Sessions III, United States District Court for the District of Vermont, sitting by designation.

1

*Defendants.*[**]

_____

FOR DEFENDANT-APPELLANT:          PETER F. LANGROCK, Langrock Sperry & Wool
                                  LLP, Middlebury, VT.

FOR APPELLEE:                     JOSEPH J. KARASZEWSKI, *for* James P.
                                  Kennedy, Jr., Acting United States Attorney
                                  for the Western District of New York, Buffalo,
                                  NY.

Appeal from a November 16, 2016, amended judgment of the United States District Court for the Western District of New York (Arcara, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Chris Cain appeals from an amended judgment, sentencing him to an aggregate term of 144 months' imprisonment and three years' supervised release. On appeal, Cain argues that he was deprived of due process because of the district court's delay in sentencing him and in assigning him counsel.

## I.   Background

On May 5, 2006, a federal grand jury returned an indictment alleging that Cain, along with other defendants, violated the Racketeering Influenced and Corrupt Organizations Act ("RICO") and committed other federal crimes. On December 7, 2007, a jury returned guilty verdicts against Cain for racketeering, racketeering conspiracy, mail fraud, use of fire to commit a felony, and conspiracy to manufacture marijuana. The district court sentenced Cain to 355 months' imprisonment. The court sentenced Cain to 60 months' imprisonment for the marijuana conviction, 235 months' imprisonment each for the racketeering and mail fraud convictions, to be served concurrently with each other and the marijuana conviction, and 120 months' imprisonment for the arson conviction, to be served consecutively.

On appeal, we vacated his two RICO convictions due to an erroneous jury instruction. *United States v. Cain*, 671 F.3d 271, 289–91 (2d Cir. 2012). We then remanded

_____

[**] The Clerk of Court is directed to amend the caption as set forth above.

"for a new trial on the RICO charges, if the government chooses to pursue them, and/or resentencing on the remaining counts." *Id.* at 303.

This Court issued its decision on January 31, 2012. However, the mandate did not issue until December 26, 2012.[1] On January 11, 2013, shortly after the mandate issued, Cain filed a letter with the district court requesting the appointment of counsel.[2] The district court never responded to that request. On March 5, 2014—over one year after Cain's initial request for counsel, and nearly 15 months since the mandate issued—Cain filed a pro se motion "for retrial on the RICO counts and/or resentencing on the remaining counts." App. 26. In his motion, Cain reminded the district court that he had asked the court to appoint him an attorney 14 months earlier. The government did not respond to Cain's motion, and the court did not address it.

Cain finally obtained counsel on August 11, 2014, when attorney Angelo Musitano filed a notice of appearance as retained counsel. He obtained counsel by borrowing money from a friend. Cain's attorney then filed a motion for bail and to dismiss Cain's remaining charges on speedy trial grounds. The government responded to this motion on September 23, 2014, by seeking to dismiss the racketeering charges that this Court had reversed on appeal—over 20 months after the mandate issued, and nearly three years after the Court first issued its decision.

The district court did not act on the pending motions for another eight months. Then, in May 2015, Cain filed another request to appoint counsel, explaining that Musitano could no longer practice law in the United States. One month later, and without response from the district court, Cain filed yet another pro se motion requesting sentencing. In that motion, Cain also requested that the district court dismiss the racketeering charges, which the government had moved to dismiss over nine months earlier. Shortly thereafter, the district court appointed Attorney Barry Covert, who filed a notice of appearance to represent Cain on June 30, 2015. On July 1, 2015, Cain also filed a pro se petition for a writ of mandamus with the Second Circuit, asking this Court to direct that the district court proceed to sentence him.

The district court finally held a conference in Cain's case on November 30, 2015. At that conference, the government acknowledged that the RICO counts "came back from the Circuit with [instruction that] if the government wanted to retry those cases to do so.

---

[1] During that time, one of Cain's co-defendants repeatedly requested extensions to file a petition for rehearing/rehearing en banc, delaying issuance of the mandate.

[2] Cain explained to the district court that he did not have the funds to pay for the lawyer who had represented him through his first direct appeal.

[The government] decided not to [and] just sort of let them sit." App. 96. The court then scheduled a sentencing hearing for February 8, 2016. Following another motion from the government, the district court finally dismissed the two RICO counts on December 22, 2015. On January 19, 2016, Cain filed another pro se motion requesting dismissal of all the remaining counts in the indictment due to the delay in his resentencing. As with his prior pro se requests for resentencing, the district court and the government did not respond to that request.

Shortly before the February 8, 2016, hearing, Covert informed the district court that he discovered he had a conflict in representing Cain. Accordingly, a week after the February 8 hearing, the Court assigned Cain new counsel. After a hearing on March 22, 2016, the district court also scheduled oral arguments for Cain's sentencing for May 18, 2016. Prior to the May 18 hearing, the government moved for a substantial upward departure based on the conduct underlying Cain's now vacated RICO convictions. The district court held the arguments on May 18, 2016, as scheduled, but then waited another five months to hold a sentencing hearing. In the meantime, Cain filed a second pro se mandamus petition with this Court in August 2016.[3] Cain's counsel also renewed Cain's request for bail that same month.

The district court finally held Cain's resentencing hearing on November 9, 2016. At the hearing, the court concluded that Cain was subject to a Sentencing Guidelines range of 37 to 46 months on the mail fraud and marijuana counts, and a mandatory consecutive 120-month mandatory minimum on the arson count, yielding a total range of 157 to 166 months.[4] The court rejected the government's request for an upward departure and sentenced Cain to 144 months' months imprisonment—24 months concurrent for the mail fraud and marijuana counts, and 120 months for the arson count, to be served consecutively to the other two sentences.[5] The district court based this downward departure on Cain's "exceptional" rehabilitation in prison. App. 340. Because the district court sentenced Cain to a sentence nearly equivalent to the time he had already served, Cain was released the same day that the district court entered its amended judgment (a week after the hearing, on November 16, 2016).[6]

---

[3] This Court denied Cain's petition after his resentencing hearing in November 2016.
[4] The district court reached this Guidelines range by concluding that Cain was in Criminal History category IV in part because of the conduct underlying the vacated racketeering convictions.
[5] The district court also imposed a three-year term of supervised release.
[6] Cain was eligible for release prior to the end of the 144 months' sentence because he had earned credit towards his sentence due to his good behavior while in prison. *See* 18 U.S.C. § 3624.

4

## II.  Cain's Due Process Claim

On appeal, Cain seeks to vacate his convictions, arguing that the district court violated his right to due process by delaying his sentencing.[7] This Court applies a two-part test to determine whether a defendant's right to due process was violated because of a delay in sentencing. Specifically, we consider "[1] the reasons for the delay as well as [2] the prejudice to the accused." *United States v. Ray*, 578 F.3d 184, 199 (2d Cir. 2009) (brackets in original) (citation omitted). Under this test, prejudice is "necessary but not sufficient to prove a due process violation." *Id.* (internal quotation marks omitted). Instead, a defendant "must show both prejudice and an unjustified reason for the delay." *Id.* Even so, these factors are not "independent prongs of a two-part test," but rather, "are related factors to be weighed in light of each other and the surrounding circumstances." *Id.* at 199–200.

This Court has also outlined additional considerations for each factor in the two-part analysis. First, as to the delay factor, we have observed that "while deliberate delay to hamper the defense weighs heavily against the prosecution, more neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government." *Id.* at 200 (brackets and internal quotation marks omitted). However, "[e]ven substantial delays in sentencing do not in all circumstances amount to a due process violation, especially when a defendant has not requested timely sentencing and is unable to establish prejudice . . . ." *Id.* at 202. Second, as to the prejudice factor, we advised in *Ray* that "absent extraordinary circumstances," the prejudice must be "substantial and demonstrable." *Id.* at 200. A defendant may demonstrate prejudice if he or she can show that the delay in sentencing "undermine[s] . . . successful rehabilitation." *Id.* at 201. Other forms of prejudice include prejudice related to the defendant's ability to present his or her case (i.e., in presenting a defense or sentencing submission) and the possibility of losing "the opportunity to receive a concurrent sentence" or "appeal as of right." *United States v. Nieves* 648 F. App'x 152, 154–55 (2d Cir. 2016) (summary order).

In this case, the government and the district court bear almost complete responsibility for the five-year delay between this Court's remand and Cain's resentencing. Indeed, both the government and the district court demonstrated a dismaying disregard for Cain's right to a timely resentencing. We find it particularly troubling that the district court ignored Cain's requests for counsel and did not rule or respond to his requests for

---

[7] In *Betterman v. Montana*, 136 S. Ct. 1609, 1617 (2016), the Supreme Court held that the Sixth Amendment Speedy Trial Clause does not apply to delayed sentencing claims, but indicated that "due process [still] serves as a backstop against exorbitant delay."

resentencing. Similarly, the government ignored our decision directing the government to determine whether to retry Cain on the RICO counts, failed to respond to Cain's pro se requests for resentencing, and simply assumed Cain would receive a much longer sentence than the one the district court ultimately imposed. Further, this case is similar to our recent decisions in cases from the Western District of New York where we held the government and district court responsible for excessive delays in criminal cases in the speedy trial context. *See United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018) (dismissing indictment on Sixth Amendment speedy trial grounds); *United States v. Pennick*, 713 F. App'x 33 (2d Cir. 2017) (summary order) (affirming dismissal of indictment counts on Sixth Amendment speedy trial grounds). We strongly emphasize that it is the responsibility of the district court to act with appropriate dispatch to address cases on remand after an appeal. The court must not leave a defendant in limbo, uncounseled, uncertain whether he will be retried, and without any indication of when, if ever, his arguments for a more lenient sentence after the dismissal of some of the most serious charges against him will be heard. And when the district court fails in this responsibility, the burden falls upon the government to remind the court of the unfinished business before it. Because the district court and the government failed in these duties, we weigh much of the delay in this case heavily against the government.[8]

Nevertheless, we conclude that Cain has not established the prejudice necessary to establish a constitutional deprivation of his right to due process. Cain was subject to a ten-year mandatory minimum sentence, which was consecutive to the sentences for the other two counts of conviction. *See* 18 U.S.C. § 844(h). Cain's Sentencing Guideline range was 157–166 months, with 120 months of that time mandatory (and mandatorily consecutive) under 18 U.S.C. § 844(h). The district court downwardly departed from this Guidelines range, sentencing Cain to 144 months' imprisonment. Cain argues that, since his eventual sentence was the effective equivalent of "time served," he would have been released sooner had he been sentenced earlier. That argument is speculative, particularly because Cain was subject to at least 120 months' imprisonment and his 144-month sentence already represented a significant downward departure. In addition, Cain has not identified any way in which the delay hampered his ability to respond to the government's arguments for an increase in Cain's criminal history category based on the conduct underlying the vacated RICO convictions. Under these circumstances, Cain has not met his heavy burden to establish "substantial and demonstrable" prejudice. *Ray*, 578 F.3d at 200.

Furthermore, in contrast to the defendant in *Ray*, Cain cannot demonstrate "substantial and demonstrable" prejudice as to his efforts at rehabilitation. Unlike in *Ray*,

---

[8] Small parts of the five-year delay may be attributable to Cain due to problems with his counsel, but these delays are minor when compared with the court- and government-caused delays.

where we considered it an important factor that the sentence would interrupt the defendant's rehabilitation, Cain's custodial sentence did not interrupt his rehabilitation, and indeed, his successful rehabilitation efforts formed the basis for reducing his sentence. *Id.* at 201–02.[9] Accordingly, we conclude that Cain has not established the prejudice that is "necessary" for him to obtain relief. *Id.* at 199.[10]

For reasons stated above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[9] Cain's inability to identify a plausible remedy for the violation he claims further highlights the lack of prejudice to be remedied. Cain principally argues for the complete vacatur of his convictions, a "remedy" that bears no relation to any prejudice he suffered. Furthermore, that remedy would undo a jury's verdict that he was guilty of serious felonies, which was affirmed on appeal, and for which he was ultimately sentenced to, and served, a substantial term of imprisonment. Cain justifies his proposal solely in terms of the deterrent effect it might have on future neglect by the government and the district court in other cases, and makes no attempt to link it to any prejudice Cain could have suffered by the delay in sentencing him.

[10] For similar reasons, we are unpersuaded by Cain's alternative argument that the district court's delay in appointing counsel constituted a Sixth Amendment violation that can be remedied only by "vacatur of the convictions and dismissal of the indictment with prejudice." Appellant's Br. 27.